UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.

RAMÓN AYALA RODRÍGUEZ
p/k/a DADDY YANKEE, an individual,

Plaintiff;

v.

LEON FERNANDO FIKSMAN,
an individual,

Defendant.

_____/

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff RAMÓN AYALA RODRÍGUEZ p/k/a DADDY YANKEE ("Plaintiff" or "Ayala") sues Defendant LEON FERNANDO FIKSMAN ("Defendant" or "Fiksman") and alleges as follows:

**Nature of Case, Jurisdiction, and Venue**

1.      This case arises from false and defamatory statements that Defendant Fiksman made about Plaintiff Ayala, professionally known as Daddy Yankee, while publicly discussing pending litigation to which Fiksman and Ayala are parties.

2.      On or about January 14, 2026, while that litigation remained pending, Fiksman appeared on a Spanish-language podcast hosted by Javier Cárdenas and, before a substantial public audience, and with actual malice, made a series of false statements falsely linking Ayala to money laundering, the financial network of former Venezuelan dictator Hugo Chávez, and a broader culture of Venezuelan corruption and criminal conduct. Fiksman falsely claimed to have reviewed documents during the course of litigation that supported these links.

3.      Those statements were published on Cárdenas's Instagram account to more than 737,000 followers, reaching members of the very public from which any jury in that pending litigation would be drawn and causing Ayala severe reputational harm in the process.

4.      This Court has diversity jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds the jurisdictional threshold of $75,000, exclusive of interest and costs, and this dispute is between citizens of different states.

5.       Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Defendant resides within this judicial district.

6.      All conditions precedent to the institution and maintenance of this action have been performed, have occurred, or have been waived.

**Parties**

4.      Plaintiff Ramón Ayala Rodríguez, professionally known as Daddy Yankee, is an individual, *sui juris*, and citizen of, and domiciled in, the Commonwealth of Puerto Rico.

5.      Defendant Leon Fernando Fiksman, is an individual, *sui juris*, a citizen of the State of Florida, domiciled in Miami-Dade County, and is subject to this Court's jurisdiction.

**General Allegations**

7.      Plaintiff Ayala, otherwise known as "Daddy Yankee" or "DY," is a world-renowned musical artist with a sterling career spanning three decades that saw him grow from a locally known urban artist in Puerto Rico to a worldwide superstar largely responsible for the mainstream rise of urban Latin music.

8.      His awards include five Latin GRAMMY® Awards, two Billboard Music Awards, 14 Billboard Latin Music Awards, two Latin American Music Awards (including the Icon Award), eight Lo Nuestro Awards, an MTV VMA, and a historic total of 64 ASCAP Awards, making him

the most awarded Latin songwriter of all time in ASCAP history. In addition to honors like the Puerto Rican Walk of Fame and "Presencia Latina" at Harvard University, he also holds the distinction of being the only Latin artist with four Spanish-language entries on the Top 20 of the Billboard Hot 100, was named ASCAP "Songwriter of the Year" three times, and became the first urban Latin artist to enter the Billboard Hall of Fame.

9.      In 2026, he has been named the Latin Grammy Recording Academy® Person of the Year.

10.      The reputation Ayala has built over thirty years, one recognized by the music industry's most prestigious institutions and beloved by hundreds of millions of fans across the globe, is not merely a professional asset but the foundation upon which his entire legacy rests. It is precisely that reputation, carefully constructed across decades of artistic achievement and public trust, that Fiksman's false and malicious statements were calculated to destroy in the hopes of boosting his prospects of prevailing in unrelated litigation.

11.      Fiksman and Ayala have never met or know each other.

12.      Fiksman and Ayala are, however, adverse parties in a civil action currently pending before the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida, styled *Leon Fernando Fiksman v. Luis Carrero, et al.*, 2024-006251-CA-01, in which Fiksman is the Plaintiff and Ayala is among the named defendants (the "Miami-Dade Lawsuit").

13.      The Miami-Dade Lawsuit concerns a business dispute arising from Fiksman's very profitable sale of his ownership interest in 10BY20, LLC ("10by20"), a company formed to own and operate padel clubs in Florida.

3

14.     At all relevant times, Fiksman had access to discovery materials exchanged in that litigation, including communications and documents produced by or on behalf of Ayala and the other defendants, including Ayala's ex-wife, Mireddys Gonzalez.

15.     The Miami-Dade Lawsuit was filed on April 8, 2024 and, at the time of this filing, is currently set for trial in August 2026.

16.     Fiksman's Miami-Dade Lawsuit is built on pure conjecture. His claims rest on circumstantial inferences and speculative theories of fraud that are unsupported by competent evidence, and his claims against Ayala in particular are supported by no meaningful evidence whatsoever. Fiksman's litigation position was further weakened when, in December 2025, the presiding judge recently excluded Fiksman's expert witness on damages under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), stripping him of the only vehicle through which he could attempt to quantify the losses he claims to have suffered. It is against this backdrop that Fiksman chose to take his case to a public audience of hundreds of thousands, making the false and malicious statements at issue here.

17.     Notably, Miami-Dade County's jury pool is drawn from one of the most heavily Latino communities in the United States, with a substantial population of Venezuelan and Cuban descent. For this community, allegations linking a public figure to the financial networks of Hugo Chávez and to a culture of Venezuelan corruption carry a uniquely visceral weight. By broadcasting those precise allegations to a Spanish-language audience of over 737,000 followers, many of whom presumably reside in, or have close ties to, South Florida, Fiksman ensured that his false narrative would reach and resonate with the very community from which a jury in the Miami-Dade Lawsuit would be selected, thus inflicting maximum reputational damage while also tainting the potential jury pool.

**I.      Fiksman's Appearance at "Levántate y Cárdenas"**

18.      On or about January 14, 2026, Fiksman appeared as a guest on a Spanish-language podcast and media program titled "Levántate y Cárdenas" (the "Podcast").

19.      The Podcast was hosted by Javier Cárdenas and broadcasted to a substantial international audience of Spanish-speaking listeners.

20.      "Levántate y Cárdenas" has been airing since 2022 and has over 1,100 podcast episodes.

21.      After its airing, the Podcast was subsequently republished on Cárdenas' personal Instagram account (@_javiercardenas), which, at the time of the publication, had over 737,000 followers.

22.      The republication of the Podcast on Cárdenas's Instagram account was the natural, intended, and reasonably foreseeable consequence of Fiksman's decision to make the statements at issue on an established media program that exists to disseminate its content to the public, including through the host's social-media channels.

23.      Fiksman knew and intended that his statements would be widely republished and disseminated to a broad public audience, including through Cárdenas's Instagram account and its more than 737,000 followers, and Fiksman is therefore responsible for that republication.

24.      At the outset of the Podcast, Cárdenas introduced the segment stating: "*we bring you an exclusive that has not yet reached Spain, that no one knows about, and it is nothing less than the Venezuelan connection between Daddy Yankee, the singer, and the son of Hugo Chávez's financier. We are talking about a lawsuit for 36 million dollars*."

25.      Fiksman established during the Podcast that Ayala was a business associate of Luis Carrero.

26. During his interview, Fiksman also made the following statements:

a. That Luis Carrero is the son of Tobías Carrero Nácar, who, according to Fiksman's stated "underst[anding]," "first financed" former Venezuelan dictator Hugo Chávez;

b. That 10by20's hiring of a Chief Financial Officer who had been convicted of money laundering was consistent with, and reflective, of the "world" in which, in Fiksman's words, "they move around";

c. That messages produced during the discovery phase of the Miami-Dade Lawsuit show "perfectly how [Ayala] is in agreement," including a purported message that Fiksman quoted to the audience— "we took everything, we kept everything"—and that Fiksman characterized as "pure and simple asset concealment"; and

27. Last but not least, Fiksman summarized his statements in the Podcast by declaring: "*Money laundering, Chávez, Daddy Yankee. That is a bit of a summary of what I am facing*".

28. Fiksman made the foregoing statements in Spanish. A certified English transcription and translation of the recording, prepared by an ISO-certified language-services provider, was filed of record in the Miami-Dade Lawsuit on February 18, 2026, and is incorporated herein by reference. As reflected in that certified translation, Fiksman stated, in pertinent part, that "in messages that … have been seen in the discovery stage, you can see perfectly how [Ayala] is in agreement," quoting— "Hey, we took everything, we kept everything"—and characterizing this as "[p]ure and simple asset concealment," before summarizing: "Money laundering, Chávez, Daddy Yankee. That's a bit of an overview of … what I have in front of me."

29.     The statements described herein were presented to the Podcast's audience as factual revelations based on Fiksman's personal knowledge and his purported review of materials obtained through the discovery process in the Miami-Dade lawsuit.

30.     His remarks were framed as statements of fact, and not opinion.

31.     Ayala has no involvement in, and no association with, money laundering, the financial network of Hugo Chávez, or Venezuelan political corruption of any kind. These allegations are false in their entirety, and Fiksman knew they were false when he made them..

32.     Fiksman had access to the discovery materials in the Miami-Dade Lawsuit and knew that those materials did not support the accusations he broadcasted to the public.

33.     No document, message, communication, or item of evidence produced in discovery in the Miami-Dade Lawsuit, or existing anywhere, supports Fiksman's statements. Not the messages Fiksman claimed to have reviewed during discovery, not any other materials exchanged in that litigation, and not any evidence from any other source.

34.     Specifically, Fiksman's representation that the discovery messages show "perfectly" that Ayala "is in agreement," and his attribution to Ayala of the words "we took everything, we kept everything," were knowingly false. No message produced in discovery in the Miami-Dade Lawsuit contains that statement by Ayala, and no such message reflects any agreement by Ayala to conceal or misappropriate assets. Having reviewed the discovery, Fiksman knew that no such message existed and that the materials did not say what he represented to the Podcast's audience they said. Fiksman nonetheless fabricated or knowingly distorted the contents of those materials and quoted to hundreds of thousands of listeners a message that does not exist, in order to lend false credibility to his accusations. Fiksman thus acted with actual malice, that is, with knowledge that his statements were false or with reckless disregard for their truth or falsity.

35.	Fiksman's statements implying that Ayala has taken part in money laundering activities were false when made and are false today.

36.	Fiksman knew the statements were false at the time he made them.

37.	The statements described herein were not made incidentally or in passing. Fiksman made those statements deliberately and with the specific intent to damage Ayala's personal and professional reputation, motivated by his interests in the Miami-Dade Lawsuit and with the calculated purpose of using the resulting reputational harm as leverage against Ayala in that proceeding.

38.	As a direct and proximate result of Fiksman's statements, Ayala suffered immediate, severe, and widespread reputational harm.

39.	Fiksman's false statements were received and internalized by hundreds of thousands of listeners and social media followers as factual revelations, generating immediate and verifiable public reaction toward Ayala among his fan base, the broader Spanish-speaking community, and the international music and entertainment industry.

40.	The false association of Ayala's name with money laundering, Venezuelan political corruption, and the financial network of Hugo Chávez caused concrete damages.

41.	The harm suffered by Ayala as a result of Fiksman's statements is particularly severe because his public image and reputation are the foundation of his commercial enterprise.

## COUNT I
## DEFAMATION

42.	Plaintiff re-alleges and incorporates by reference the allegations set forth in the foregoing sections titled "Nature of Case, Jurisdiction, and Venue," "Parties," and "General Allegations" as if fully set forth herein.

43.    Fiksman published the statements described in paragraphs 26 to 28 of this complaint to a substantial international audience of Spanish-speaking listeners during the Podcast on or about January 14, 2026. Those statements were subsequently republished on Cárdenas's Instagram account to over 737,000 followers.

44.    Fiksman's statements indicating that Ayala has taken part in activities such as money laundering, corruption, fraudulent concealment and asset misappropriation were false when made and are false today.

45.    Ayala has no involvement in or association with money laundering, the financial network of Hugo Chávez, or Venezuelan political corruption of any kind.

46.    The messages Fiksman claimed to have reviewed during discovery, purportedly demonstrating Ayala's express agreement with the fraudulent concealment of assets, do not state what Fiksman represented them to say and he knew it.

47.    Fiksman made the statements described in paragraphs 26 to 28 knowing they were false at the time he made them.

48.    Fiksman deliberately misrepresented the contents of those discovery materials to the Podcast's audience, including by falsely claiming that messages produced in discovery demonstrated Ayala's express agreement with the fraudulent concealment of assets, with the purpose of providing a false sense of legitimacy to his comments.

49.    Fiksman made these statements with the specific intent to damage Ayala's personal and professional reputation and then to use the resulting reputational harm as leverage in the Miami-Dade Lawsuit.

50.    Fiksman's statements exposed Ayala to hatred, ridicule, and contempt, and have deterred third persons from associating or dealing with Ayala.

51. His statements also generated immediate and verifiable negative public reaction toward Ayala among his fan base, the broader Spanish-speaking community, and the international music and entertainment industry.

52. As a direct and proximate result of Fiksman's statements, Ayala has suffered severe harm to his personal and professional reputation, damage to his commercial enterprise, and harm to his relationships with business partners, record labels, streaming platforms, concert promoters, and the broader entertainment industry.

53. As a direct and proximate result of Fiksman's statements, Ayala has suffered and will continue to suffer economic damages.

54. As a direct and proximate result of Fiksman's statements, Ayala has suffered and will continue to suffer noneconomic damages, including but not limited to past and future harm to his reputation, mental anguish, emotional distress, and loss of capacity for the enjoyment of life.

55. His damages are estimated at no less than ten million dollars ($10,000,000.00).

WHEREFORE, Plaintiff RAMÓN AYALA RODRÍGUEZ, demands judgment against Defendant Leon Fernando Fiksman for all his damages, including but not limited to compensatory damages and punitive damages, in an amount to be determined at trial, plus pre-judgment and post-judgment interest and costs of this suit, and for such other and further relief as this Court deems just and proper.

## COUNT II
## DEFAMATION PER SE

56. Plaintiff re-alleges and incorporates by reference only the allegations set forth in the foregoing sections titled "Nature of Case, Jurisdiction, and Venue," "Parties," and "General Allegations," and does not incorporate the allegations of Count I, as if fully set forth herein.

57.     Fiksman published the statements described in paragraphs 26 to 28 of this complaint to a substantial international audience of Spanish-speaking listeners during the Podcast on or about January 14, 2026. Those statements were subsequently republished on Cárdenas's Instagram account to over 737,000 followers.

58.     Fiksman's statements indicating that Ayala has taken part in activities such as money laundering, corruption, fraudulent concealment and asset misappropriation were false when made and are false today.

59.      Ayala has no involvement in or association with money laundering, the financial network of Hugo Chávez, or Venezuelan political corruption of any kind.

60.     The messages Fiksman claimed to have reviewed during discovery, purportedly demonstrating Ayala's express agreement with the fraudulent concealment of assets, do not state what Fiksman represented them to say and he knew it.

61.     Fiksman made the statements described in paragraphs 26 to 28 herein knowing they were false at the time he made them.

62.     Fiksman deliberately misrepresented the contents of those discovery materials to the Podcast's audience, including by falsely claiming that messages produced in discovery demonstrated Ayala's express agreement with the fraudulent concealment of assets, with the purpose of providing a false sense of legitimacy to his comments.

63.     Fiksman made these statements with the specific intent to damage Ayala's personal and professional reputation and then to use the resulting reputational harm as leverage in the Miami-Dade Lawsuit.

64.     On their face, and without the need for any additional explanation or innuendo, Fiksman's statements charged Ayala with having committed crimes, including money laundering and the fraudulent concealment and misappropriation of assets.

65.     Money laundering is an infamous crime.

66.     On their face, and without the need for any additional explanation or innuendo, Fiksman's statements have injured Ayala in his trade and profession as one of the most recognized musical artists in the world, by falsely associating his name with criminal conduct, money laundering, and Venezuelan political corruption before hundreds of thousands of listeners and social media followers.

67.     Fiksman's statements generated immediate and verifiable negative public reaction toward Ayala among his fan base, the broader Spanish-speaking community, and the international music and entertainment industry.

68.     As a direct and proximate result of Fiksman's statements, Ayala has suffered severe harm to his personal and professional reputation, damage to his commercial enterprise, and harm to his relationships with business partners, record labels, streaming platforms, concert promoters, and the broader entertainment industry.

69.     As a direct and proximate result of Fiksman's statements, Ayala has suffered and will continue to suffer economic damages.

70.     As a direct and proximate result of Fiksman's statements, Ayala has suffered and will continue to suffer noneconomic damages, including but not limited to past and future harm to his reputation, mental anguish, emotional distress, and loss of capacity for the enjoyment of life.

71.     His damages are estimated at no less than ten million dollars ($10,000,000.00).

WHEREFORE, Plaintiff RAMÓN AYALA RODRÍGUEZ, demands judgment against Defendant Leon Fernando Fiksman for all his damages, including but not limited to compensatory damages and punitive damages, in an amount to be determined at trial, plus pre-judgment and post-judgment interest and costs of this suit, and for such other and further relief as this Court deems just and proper.

**COUNT III**
**DEFAMATION BY IMPLICATION**

72.     Plaintiff re-alleges and incorporates by reference only the allegations set forth in the foregoing sections titled "Nature of Case, Jurisdiction, and Venue," "Parties," and "General Allegations," and does not incorporate the allegations of Counts I or II, as if fully set forth herein.

73.     Fiksman published the statements described in paragraphs 26 to 28 of this complaint to a substantial international audience of Spanish-speaking listeners during the Podcast on or about January 14, 2026. Those statements were subsequently republished on Cárdenas's Instagram account to over 737,000 followers.

74.     During the Podcast, Fiksman deliberately juxtaposed a series of facts — some true, some false, and some misleadingly incomplete — so as to create the false impression that Ayala is a participant in criminal activity, including money laundering, asset concealment, and the corrupt financial network of former Venezuelan dictator Hugo Chávez.

75.     Specifically, Fiksman combined the following to create that false impression:

   a.   The true fact that Ayala has been a business associate of Luis Carrero to suggest that Ayala was a partner in 10by20;

   b.   The false and misleading assertion that Luis Carrero's father was the primary financier of Hugo Chávez;

13

c. The true fact that 10by20's CFO had been convicted of money laundering in an unrelated federal proceeding, juxtaposed with the false implication that this conviction reflected the criminal culture in which Ayala operates; and

d. The true statement that he received discovery materials in the Miami-Dade Lawsuit combined with the false assertion that such materials demonstrated Ayala's express agreement with fraudulently concealment and misappropriation of his assets.

76. No single one of these statements, standing alone, directly accused Ayala of criminal conduct. However, by deliberately combining and juxtaposing them in the manner described above, Fiksman created the unmistakable and false impression that Ayala is a knowing participant in money laundering, asset fraud, and Venezuelan political corruption.

77. Fiksman reinforced and crystallized that false impression by concluding his remarks with the statement: "Money laundering, Chávez, Daddy Yankee. That is a bit of a summary of what I am facing".  With such assertion, Fiksman directly and intentionally linked Ayala's name to criminal conduct in the minds of the Podcast's audience.

78. The false impression created by Fiksman's statements was received and internalized by hundreds of thousands of listeners and social media followers as a factual revelation, generating immediate and verifiable negative public reaction toward Ayala.

79. Fiksman knew at the time of the Podcast that the impression created by his statements was false.

80. At the time he made those statements, Fiksman had access to the discovery materials exchanged in the Miami-Dade Lawsuit and knew that those materials did not support the defamatory impression he conveyed to the public.

14

81.     Fiksman deliberately selected, combined, and juxtaposed the facts described herein with full knowledge of the false and defamatory impression they would create in the minds of the Podcast's audience.

82.     Fiksman made these statements with the specific intent to damage Ayala's personal and professional reputation and then to use the resulting reputational harm as leverage in the Miami-Dade Lawsuit.

83.     As a direct and proximate result of Fiksman's statements, Ayala has suffered severe harm to his personal and professional reputation, damage to his commercial enterprise, and harm to his relationships with business partners, record labels, streaming platforms, concert promoters, and the broader entertainment industry.

84.     As a direct and proximate result of Fiksman's statements, Ayala has suffered and will continue to suffer economic damages.

85.     As a direct and proximate result of Fiksman's statements, Ayala has suffered and will continue to suffer noneconomic damages, including but not limited to past and future harm to his reputation, mental anguish, emotional distress, and loss of capacity for the enjoyment of life.

86.     His damages are estimated at no less than ten million dollars ($10,000,000.00).

WHEREFORE, Plaintiff RAMÓN AYALA RODRÍGUEZ, demands judgment against Defendant Leon Fernando Fiksman for all his damages, including but not limited to compensatory damages and punitive damages, in an amount to be determined at trial, plus pre-judgment and post-judgment interest and costs of this suit, and for such other and further relief as this Court deems just and proper.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE**

Respectfully submitted,

By: /s/ Juan C. Ramos-Rosado
**Maria A. Dominguez, Esq.**
Florida Bar Number: 0510221
m.dominguez@dmrpr.com
**Javier F. Micheo Marcial, Esq.**
Florida Bar Number : 1009694
j.micheo@dmrpr.com
**Juan C. Ramos-Rosado, Esq.**
Florida Bar Number: 1002562
j.ramos@dmrpr.com

DMR LAW LLC
8750 NW 36th St, Suite 570
Doral, FL 33178
Telephone: (305) 548-8666

*Counsel for Plaintiff Ramón Ayala*

16